```
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ALABAMA
                              SOUTHERN DIVISION
```

ESMAIL EBRAHIMI,              }
                              }
        Plaintiff,            }    CIVIL ACTION NO.
                              }    00-AR-2089-S
v.                            }
                              }
UNIVERSITY OF MONTEVALLO,     }
                              }
        Defendant.            }
                              }

### MEMORANDUM OPINION

Before the court is the motion for partial summary judgment filed by defendant, University of Montevallo ("Montevallo"). Montevallo seeks summary judgment on the following claims of plaintiff, Esmail Ebrahimi ("Ebrahimi"): (1) his 1999 failure-to-promote claim; (2) his retaliation claims based upon his protected activities in the early 1990s; and (3) his § 1981 claim for "race discrimination."

### Summary Judgment Facts

Ebrahimi, a native Iranian, began working at Montevallo's physical plant in 1985. Persons born in Iran are generally of Middle Eastern descent and Ebrahimi is no exception. He is the only Middle Eastern and only Iranian working in Montevallo's physical-plant department.

The physical-plant department consists of two groups, HVAC and utilities. Initially, Ebrahimi worked under Jimmy Lawley as a

"plant operator I" in utilities. At the time, Jimmy Lawley supervised both the HVAC and the utilities groups. Approximately one year after Ebrahimi was hired, the physical-plant director, Ken Martin, decided to reorganize HVAC and utilities into two separate departments. Jimmy Lawley continued directly supervising Ebrahimi following the reorganization.

Under Jimmy Lawley, Ebrahimi was promoted to "plant operator II." In 1991, Eddye Lawley, who is no relation to Jimmy Lawley, replaced Ken Martin as the physical-plant director. Ebrahimi was due to be promoted to "plant operator III" in 1991, but the promotion did not occur. Ebrahimi sued, alleging the failure to promote him was motivated by discrimination. Eddye Lawley knew of Ebrahimi's 1991 lawsuit during all relevant periods.

Around that same time, Jimmy Lawley and his crew leader retired. There were, therefore, two openings in utilities -- utilities supervisor and utilities crew leader. Eddye Lawley promoted Jesse Young from HVAC crew leader to utilities supervisor. Eddye Lawley selected Young as crew leader over Ebrahimi because of Ebrahimi's pending lawsuit. Another utilities employee, David Marchant, who had less seniority than Ebrahimi, was promoted to utilities crew leader. However, Montevallo later agreed to promote Ebrahimi to utilities crew leader, replacing Marchant, in order to settle Ebrahimi's lawsuit.

From 1991 through 1999, Montevallo's HVAC and utilities were

separate departments. The HVAC supervisor was James Leach and Joe Knight was HVAC crew leader. The utilities supervisor was Jesse Young and Ebrahimi was utilities crew leader. Then, in February 1999, Young announced his plans to retire.

With Young's retirement, Eddye Lawley reorganized the HVAC and utilities departments into one. Eddye Lawley claims he initially decided to recombine the departments in 1993 or 1994, but was content to wait for either Young or Leach to retire before executing the plan. According to Eddye Lawley, combining the departments would allow him to quit refereeing disputes between employees of HVAC and utilities. He also believed that the combination would result in a cost savings to Montevallo. However, Leach declares that no disputes ever occurred and that combining the two positions increased the cost to Montevallo. According to Leach, Eddye Lawley combined the departments in order to prevent Ebrahimi from being promoted.

Although Ebrahimi requested promotion to a supervisor position, Eddye Lawley promoted Leach to the newly created position of HVAC/utilities supervisor. Leach's new position included a $5,000 raise in annual salary. Leach had been employed with Montevallo longer than Ebrahimi and had several years of supervisor experience. However, Ebrahimi was more knowledgeable of the utilities facility and its functions. Ebrahimi continued as utilities crew leader.

Since Young's retirement, Ebrahimi has run all aspects of the utilities facility. Ebrahimi makes daily assignments and approves leave for all employees in the utilities facility. When Leach was named HVAC/utilities supervisor, the only additional duty Leach took on was delivering mail to the utilities facility. Ebrahimi was in all other respects in charge of the facility. There have been no complaints about the operation of the utilities facility since Ebrahimi took over day-to-day supervision. Essentially, Ebrahimi inherited all the duties formerly performed by Young upon Leach's promotion.

It is undisputed that Eddye Lawley dislikes Ebrahimi. As physical-plant supervisor, Eddye Lawley is also in charge of the university police. In that capacity, he directed the chief of police in 2001 to ascertain whether Ebrahimi's father had a current visa. His basis for the directive was his belief that he had a duty in the post-9/11 world to check on the status of the visa.

### Analysis

Montevallo first attacks Ebrahimi's 1999 failure-to-promote claims. Montevallo contends that it was not accepting applications for any positions in 1999 and, therefore, Ebrahimi cannot prove those claims. Ebrahimi counters that his case is one of direct, rather than circumstantial evidence. *See Wright v. Southland Corp.*, 187 F.3d 1287, 1293-1303 (11th Cir. 1999) (discussing differences between direct and circumstantial evidence). Ebrahimi

argues that while a plaintiff can establish a presumption of discrimination by meeting the *prima facie* elements outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), there is no such requirement when there is direct evidence of discrimination.

In *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 362 (1977), the Supreme Court held that "[t]he proof of the pattern or practice [of discrimination] supports an inference that any particular employment decision, during the period in which the discriminatory policy was in force, was made pursuant to that policy." The Court held that a plaintiff meets his or her burden merely by showing an unsuccessful application for a position. *Id*. Ebrahimi argues that a pattern or practice exists in this case and, therefore, he is relieved of any showing that a position existed. However, this argument takes too great a leap.

The *prima facie* elements of a failure-to-promote claim include "the existence of a vacant position." *Walker v. Jefferson County Home*, 726 F.2d 1554, 1556-57 (11th Cir. 1984). *Teamsters* does not eliminate that requirement in the direct-evidence context: "[r]equiring a plaintiff to demonstrate that he or she unsuccessfully applied for a job **necessarily implies** that the plaintiff must demonstrate there was a job available for which the employer was seeking applications." *Rutstein v. Avis Rent-A-Car Sys.*, 211 F.3d 1228, 1238 n.19 (11th Cir. 2000). Montevallo points

out that it did not seek applicants for utilities supervisor in 1999. Instead, the management of the HVAC and utilities facilities were combined into a single position, eliminating the need for a utilities supervisor. In other words, following Young's retirement, no utilities-supervisor position existed. *Rutstein*, 211 F.3d at 1238.

Ebrahimi argues that Montevallo's elimination of the utilities supervisor is a ruse because all of the duties and responsibilities of the utilities supervisor were placed on him. However, Ebrahimi admits that he had primarily supervised the other utilities employees before Young retired. The only change in his workload was an increase in paperwork. The mere fact that an employer increased an employee's duties without giving him or her a raise is not actionable under Title VII. There must be a "*serious and material* change in the terms and conditions or privileges of employment" that rises to the level of an adverse impact. *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis original). This court is not a super-personnel department meant to alleviate every complaint an employee has about the way an employer restructures its business. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001); *Denny v. City of Albany*, 247 F.3d 1172, 1188 (11th Cir. 2001); *Chapman v. AI Transport*, 229 F.3d 1012, 1031 (11th Cir. 2000) (en banc). Accordingly, summary judgment on the utilities-supervisor position is warranted.

Relying on *Rutstein*, Montevallo further argues that it did not "seek[] applications" for any other position in 1999 and, therefore, Ebrahimi's claim concerning the HVAC/utilities supervisor are equally meritless. Montevallo contends that there was no job available because Leach, as the senior and only remaining supervisor, was automatically made the HVAC/utilities supervisor. However, this analysis reads *Rutstein* too broadly.

Montevallo did have a job available. Under its reorganization plan, two supervisor positions were eliminated and an HVAC/utilities supervisor position was created. Montevallo hired Leach to fill that position with an accompanying $5,000 raise. The fact that Montevallo did not consider any other applicant for the position does not preclude Ebrahimi's failure-to-promote claim as to the HVAC/utilities supervisor. That claim will proceed.

Next, Montevallo attacks Ebrahimi's retaliation claims. Montevallo concedes that Ebrahimi engaged in protected activity as late as 1992. However, Montevallo challenges that the seven-year period between Ebrahimi's 1992 activity and the alleged adverse actions precludes Ebrahimi's retaliation claims. In other words, Montevallo argues that Ebrahimi is unable to establish the third element of his *prima facie* retaliation case, a causal link between the protected activity and the adverse employment action. *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000).

To establish a causal link, "a plaintiff need only show 'that

the protected activity and the adverse action were not wholly unrelated.'" *Clover v. Total Sys. Serv., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (quoting *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985)). A genuine issue of material fact as to the causal link is created when a plaintiff establishes a close temporal proximity between the decision-maker's awareness of the protected conduct and the adverse action. *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000); *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999). Ebrahimi admits that seven years transpired between the settlement of his lawsuit and his denied promotion to supervisor. This temporal proximity fails to meet the "very close" requirement imposed by the Supreme Court. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing cases finding as little as three months insufficient). Similarly, the Eleventh Circuit has found no temporal proximity in 15-month periods. *Manicca v. Brown*, 171 F.3d 1364, 1370 (11th Cir. 1999). Undaunted, Ebrahimi attempts to bridge the gap.

    He argues that Eddye Lawley decided to recombine the HVAC and utilities supervisor positions as early as 1993 -- a one-year gap. Meanwhile, the argument goes, Eddye Lawley lay in wait for an opportunity to retaliate. This court has heard other plaintiffs advance this causal-link theory, but is unaware of any court that has adopted it. This theory obfuscates the requirement that the

dates of the protected activity and the **adverse action** must be temporally close. *Gupta*, 212 F.3d at 587-88. While the court is mindful that a devious and knowledgeable employer may use the temporal proximity rule to its advantage, this court is not inclined to create a new exception to the general rule in this case. The court will grant Montevallo's motion on Ebrahimi's retaliation claims.

Finally, Montevallo argues that Ebrahimi has disavowed his 42 U.S.C. § 1981 claim for race discrimination. Ebrahimi claims he has been subject to discrimination because he's from Iran. In his deposition, Ebrahimi answered that claiming to be Iranian or Persian was "the same thing." Relying on an Eighth Circuit case, Montevallo argues that Iranians are Caucasoids and § 1981 provides no cause of action for national origin discrimination. *See Zar v. South Dakota Bd. of Examiners of Psychologists*, 976 F.2d 459, 467 (8th Cir. 1992). It reasons that Ebrahimi's complaint that he has been discriminated against because he is a "white male" must fail.

Whether the court views race in the context of Congress' conception of race in 1866, as Montevallo requests, or in the context of Eddye Lawley's post-9/11 perception, the court is unpersuaded. *See Shaare Tefila Congregation v. Cobb*, 481 U.S. 615 (1987). It is undisputed that Ebrahimi is the only native Iranian and only person of Middle Eastern descent working in Montevallo's physical plant. Ebrahimi is alleging discrimination based on

ancestry and racial characteristics. Congress intended to forbid such discrimination "whether or not it would be classified as racial in terms of modern scientific theory." *St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987). The fact that he is Caucasoid does not whisk him outside the protection of 42 U.S.C. § 1981. Montevallo's motion on this claim fails.

A separate order effectuating these conclusions will be entered.

DONE this 6th day of February, 2004.

　　　　　　　　　　　　　　　　／s／ William M. Acker
　　　　　　　　　　　　　　　　WILLIAM M. ACKER, JR.
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE